IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RONALD DILL** | : | Case No. 3:20-cv-373 |
| 6849 S. Kirker Road | : | |
| West College Corner, IN  47003, | : | Judge: |
| | : | |
| **Plaintiff for himself,** | : | |
| **and all others similarly situated,** | : | |
| | : | |
| v | : | |
| | : | |
| **DRAKE-STATE AIR, INC.** | : | **Jury Demand Endorsed Hereon** |
| Serve Statutory Agent: | : | |
| Steve M. Chrismer | : | |
| 73 North Main Street | : | |
| West Alexandria, OH  45381, | : | |
| | : | |
| and | : | |
| | : | |
| **STEVE M. CHRISMER** | : | |
| 4828 Wolf Creek Pike | : | |
| Dayton, OH  45417, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

NOW COMES Plaintiff Ronald Dill, ("Plaintiff") individually and on behalf of other members of the general public similarly situated, and proffer this Complaint for damages against Defendant Drake-State Air, Inc. ("Defendant Drake") and Defendant Steve M. Chrismer ("Defendant Chrismer") (collectively "Defendants").

**JURISDICTION AND VENUE**

1. This action is brought pursuant to the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. §201, *et seq.*, Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111.03 ("Chapter 4111"), Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"), Ohio Constitution, Art. II, §34a (the "Ohio Constitution"), O.R.C. § 4112 *et seq.*, and O.R.C. § 4123.90.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 which provides for original jurisdiction of Plaintiff's claims arising under the laws of the United States.

3. This Court has jurisdiction over Plaintiff's claims under the statutory laws pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. This Court has subject-matter jurisdiction over this case because Plaintiff notified Defendant Drake his intent to bring an Ohio public policy claim as recognized by O.R.C. § 4123.90 based upon Defendant Drake's decision to terminate Plaintiff unlawfully for pursuing his workers' compensation rights.

5. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio and performed his job duties there and Defendants are doing and have done substantial business in the Southern District of Ohio.

## THE PARTIES

6. Plaintiff is an individual, a United States citizen, and a resident of the state of Indiana.

7. At all times relevant herein, Plaintiff and those similarly situated were "employees" of Defendants as that term is defined in the FLSA, Chapter 4111, and Ohio Constitution.

8. At all times relevant herein, Plaintiff is an "employee" of Defendants as that term is defined under O.R.C. § 4112 *et seq.* and O.R.C. § 4123.90.

9. Defendant Drake-State Air, Inc. is an Ohio corporation for profit doing business in the Southern District of Ohio.

10. Defendant Steve M. Chrismer is the owner of Defendant Drake-State Air, Inc.

11. At all times relevant herein, Defendants were covered "employers" as that term is defined in the FLSA, Chapter 4111, OPPA, Ohio Constitution, O.R.C. § 4112 *et seq.* and O.R.C. § 4123.90.

12. At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

13. Defendants are and have been, jointly and individually, "employers" as that term is defined by the FLSA, Chapter 4111, and O.R.C. § 4112 *et seq.*

14. During relevant times, Defendant Chrismer possessed and exercised the authority to hire, fire, and discipline Defendant Drake's employees.

15. During relevant times, Defendant Chrismer possessed and exercised the authority to set rates and methods of compensation of Defendant Drake's employees.

16. During relevant times, Defendant Chrismer possessed and exercised the authority to control the work schedules and employment conditions of Defendant Drake's employees.

17. During relevant times, Defendant Chrismer possessed and exercised ultimate authority and control of employment records of Defendant Drake's employees.

18. During relevant times, Defendant Chrismer possessed and exercised control of the normal day-to-day activities of Defendant Drake's employees.

19. During relevant times, Defendant Chrismer possessed and exercised ultimate decision-making power over important company decisions concerning Defendant Drake.

20. During relevant times, Defendants have mutually benefitted from the work performed by employees, including Plaintiff and those similarly situated.

21. During relevant times, Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to employees, including Plaintiff and those similarly situated.

22. During relevant times, Defendants shared the services of employees, including Plaintiff and those similarly situated.

23. During relevant times, Defendants acted directly or indirectly in the interest of each other in relation to employees, including Plaintiff and those similarly situated.

24. Upon information and belief, Defendants' employees were engaged in interstate commerce and Defendants have annual gross volume sales and/or business in an amount not less than $500,000.00.

25. Plaintiff brings this action on his behalf and on behalf of those similarly situated, and Plaintiff has given written consent to bring this action to collect unpaid overtime and other unpaid compensation under the FLSA.  The consent form is being filed along with the Complaint pursuant to 29 U.S.C. § 216(b).  (Attached as Exhibit A).

**FACTUAL BACKGROUND**

26. Plaintiff began working for Defendants in or around 2004.

27. At the time of Plaintiff's termination, Plaintiff worked as an Installer for Defendants.

28. Plaintiff's major responsibilities as an Installer included installing residential HVAC units and training less experienced installers on how to perform such installations.

29. Plaintiff was one of approximately 15 Installers Defendants employed to install HVAC units during the last three years of Plaintiff's employment.

30. Defendants required Plaintiff and the other Installers to work Monday through Friday. Defendants also requested Plaintiff and the other Installers to volunteer to work some weekend days.

31. During the first thirteen years of Plaintiff's employment, Defendants required Plaintiff and the other Installers to report to Defendants' Eaton, Ohio facility each morning at 7:30 a.m. Once at the facility, Plaintiff and the other Installers clocked-in for the day.

32. Defendants required Plaintiff and the other Installers to report to the facility so they could do, among other things: meet their other crew member for the day; receive any necessary instructions and feedback from Keith Moody (VP and Chief of Operations); load the company-owned vehicle with the necessary supplies, materials, and tools; and, pick up the company-owned vehicle.

33. Plaintiff and the other Installers needed to pick up the company-owned vehicle because it not only allowed them to haul all the tools and supplies to the job, but also contained a layout table for performing sheet metal work, a metal brake for bending sheet metal, and a Pittsburgh machine to lock sheet metal together, which was vital for making custom fittings for the job.

34. Plaintiff and the other Installers drove the company-owned vehicle to the customers' houses each day. Typically, they worked through the day until they finished the job at the customers' house sometime between 4:00 p.m. and 6:00 p.m.

35. After installing the HVAC unit, Plaintiff and the Installers took pictures of the job, tested equipment and setup, checked all operations, completed paperwork, answered customer questions, collected the balance due, and debriefed job information via the iPad. Plaintiff and the Installers clocked-out on their phones at the customers' home once they completed all their tasks at the customers' home.

36. Once Plaintiff and the Installers clocked-out for the day, they almost always drove the company-owned truck back to Defendants' Eaton, Ohio facility each day.

37. Defendants generally mandated that Plaintiff and the other Installers drive the company-owned vehicles back to Defendants' facility because, among other reasons: (1) the company-owned vehicle might need to be unloaded and reloaded at the end of the day; (2) the company-owned vehicle was needed for other crews the following day; and, (3) the security of maintaining the company-owned vehicle at Defendants' facility as it was on camera all night at the facility.

38. Since Defendants required Plaintiff and the other Installers to install HVAC units throughout the Dayton, Ohio, region, including as far east as Springfield, Ohio, Plaintiff and the other Installers spent approximately four hours per week of drive-time at the end of their day for which Defendants did not compensate them.

39. A few days a week, Defendants required Plaintiff and the other Installers to perform additional tasks once they got back to Defendants' facility at the end of the day, even though Plaintiff and the other Installers had clocked-out at the customers' location. For example, Defendants required Plaintiff and the other Installers to do, among other things, after they got back

6

to the shop:  (1) make A/C kits; (2) make furnace kits; (3) make PVC kits; (4) refill trays; (5) put up stock; (6) pull service parts; and, (7) check in new equipment and stage.  Plaintiff and other Installers spent an average of two hours back at the shop each week performing these additional off-the-clock tasks back at the facility.

40.  In late 2017, Defendants began mandating Plaintiff arrive at to the facility at 7:00 a.m. each day.  Plaintiff would clock in at that time, as that was the time he arrived at Defendants' facility.  Defendants required Plaintiff to arrive at that time so he could prepare the shop for the day by doing, among other things, unlocking the shop, opening the building, raising the doors, and receiving shipments.  After approximately 12 months of arriving at 7:00 a.m., Plaintiff notified that Defendants' office personnel was adjusting his time by changing his start-time from 7:00 a.m. to 7:30 a.m.  Given that Defendants failed to pay Plaintiff for the first-half hour he worked during that time, he returned to his previous schedule of arriving at Defendants' facility at 7:30 a.m. each day.

41.  On or about January 25, 2020, Plaintiff hurt his left wrist while installing a HVAC unit at a customer's house.  Specifically, Plaintiff hurt his wrist when he was installing the flue pipe on the furnace while twisting the pipe to interlock the joints of the pipe.  Plaintiff felt a pop in his wrist while he was locking the pipes together.  Immediately, Plaintiff felt some tenderness and soreness, but he was able to continue to work and complete the job.

42.  On Tuesday, January 28, 2020, Plaintiff's wrist became very swollen as he tried to work that day and continued to cause him a lot of pain.  Plaintiff reported the problems with his wrist to Wendy Moody and Keith Moody.  They had him complete an "Employee Injury Statement."  In the statement, Plaintiff explained his injury in detail, providing the date, location, description of

events, and more. Plaintiff advised the Moodys that he planned on going to the hospital the following day to have his wrist examined.

43. Ms. Moody checked with Julie Chrismer on how Plaintiff should file his claim. Ms. Chrismer responded to Ms. Moody responded by saying Plaintiff should file it under his own insurance. As such, Ms. Moody sent Plaintiff a text message that day informing him, "You need to go under your own insurance."

44. The following day, January 29, 2020, Plaintiff went to the hospital for his wrist to be examined. The medical provider diagnosed Plaintiff with a "ligament sprain."

45. Plaintiff advised Ms. Moody of the diagnoses from the hospital. Ms. Moody responded via text, "I do not have any thing on you tomorrow," though everyone else at DSA was working that day. Later that day, Plaintiff sent Ms. Moody the paperwork from his medical provider indicating his diagnosed condition and stating that he had a full return-to-work on Monday, February 3, 2020.

46. On Friday, January 31, 2020, Ms. Moody sent Plaintiff a text message saying, "Nothing for monday." The following Monday, February 3, 2020, Ms. Moody sent Plaintiff a text message saying, once again, "I dont have anything tomorrow … please text me back so I know u got this." Ms. Moody sent a similar text to Plaintiff the following three days, claiming that Defendants had no work for him on those days.

47. Given Defendants' failure to schedule Plaintiff for work, he filed for unemployment compensation benefits through the State of Ohio. The State of Ohio awarded Plaintiff benefits starting on January 28, 2020. Defendants informed the State of Ohio that they laid him off on January 28, 2020 because Plaintiff was unemployed "due to a lack of work/layoff."

48. On February 18, 2020, Plaintiff reached out to Defendant Steve M. Chrismer to see why Defendants had failed to call him back to work. Plaintiff met with Defendant Steve M. Chrismer soon thereafter to discuss Defendants' decision to terminate his employment. During the meeting, Defendant Steve M. Chrismer indicated that Defendants "fired" Plaintiff because he was "too slow," he "took longer than everyone else," his "performance was down," and he "doesn't follow procedures on Job Link on the iPad."

## **COLLECTIVE ALLEGATIONS**

49. The Named Plaintiff Ronald Dill ("Named Plaintiff") brings his FLSA claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of himself and all other Similarly Situated Persons ("SSPs") of the opt-in class, consisting of:

> All current and former employees of Defendants who worked as installers on or after September 8, 2017 (the "216(b) Collective" or the "216(b) Collective Members").

50. Upon information and belief, there are approximately 15 similarly situated individuals.

51. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation, compensation withheld in violation of the FLSA, liquidated damages, and attorneys' fees under the FLSA. In addition to Named Plaintiff, numerous putative 216(b) Collective Members have been denied proper overtime compensation due to Defendants' company-wide payroll policies and practices. The Named Plaintiff is representative of those other similarly situated employees and is acting on behalf of their interests as well as his own in bringing this action.

52. The identities of the putative 216(b) Collective Members are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of

collectively adjudicating their claims for overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

**FIRST CAUSE OF ACTION**
**FLSA, 29 U.S.C. §201,** *et seq.*
**Failure to Pay Overtime**

53. All of the preceding paragraphs are realleged as if fully rewritten herein.

54. This claim is brought as part of a collective action by the Plaintiff on behalf of himself and all other SSPs.

55. The FLSA requires that employees receive premium overtime compensation for hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1).

56. During his employment with Defendants, Plaintiff and the SSPs worked in non-exempt positions and were therefore not exempt from receiving overtime payments.

57. From September 8, 2017 to present, Defendants did not pay Plaintiff and the SSPs for hours worked in excess of 40 hours per workweek that Plaintiff and the SSPs spent driving back from the customers' homes and, on a fairly consistent basis, additional work Defendants required once Plaintiff and the SSPs returned back at Defendants' facility.

58. Defendants were aware that Plaintiff and the SSPs were not receiving wages or overtime premium wages for time spent driving back from the customers' homes and performing the additional work required at Defendants' facility.

59. Defendants knew or should have known that they were required to provide Plaintiff and the SSPs with wages and overtime premium wages for time spent driving back from the customers' homes and performing the additional work required at Defendants' facility.

60. The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay Plaintiff and the SSPs is unknown at this time, as many of the records

necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants.

61. As a direct and proximate result of Defendants' conduct, Plaintiff and the SSPs have suffered and continue to suffer damages. Plaintiff and the SSPs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available under the FLSA.

**SECOND CAUSE OF ACTION**
**OMFWSA O.R.C. § 4111, *et seq*. and Ohio Constitution**
**Failure to Pay Overtime**

62. All of the preceding paragraphs are realleged as if fully rewritten herein.

63. This claim is brought under Ohio Law.

64. Defendants' repeated and knowing failure to pay Plaintiff and the SSPs wages and overtime premium wages for time spent driving back from the customers' homes and performing the additional work required at Defendants' facility were violations of Chapter 4111 and the Ohio Constitution and, as such, Defendants willfully withheld and failed to pay the overtime compensation to which Plaintiff is entitled.

65. For Defendants' violations of Chapter 4111 and Ohio Constitution, by which Plaintiff and the SSPs have suffered and continue to suffer damages, Plaintiff and the SSPs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available under Chapter 4111 and Ohio Constitution.

**THIRD CAUSE OF ACTION**
**Violations of OPPA on Behalf**
**Of Plaintiff and SSPs**

66. All of the preceding paragraphs are realleged as if fully rewritten herein.

67. During all times material to this Complaint, Defendants have been employers required to comply with the mandates of the OPPA, O.R.C. § 4113.15.

68. Plaintiff and the SSPs were employed by Defendants within the meaning of the OPPA and were not otherwise exempt.

69. The OPPA requires that Defendants pay Plaintiff and the SSPs all wages owed, on or before the first (1st) day of each month for wages earned by them during the first (1st) half of the preceding month ending with the fifteenth (15th) day thereof, and, on or before the fifteenth (15th) day of each month, for wages earned by them during the preceding calendar month. See O.R.C. § 4113.15(A).

70. During all times material to this Complaint, because of Defendants' failure to compensate Plaintiff and the SSPs fully and properly for all work performed, Plaintiff and the SSPs were not paid all wages earned within thirty (30) days of performing the work. See O.R.C. § 4113.15(B).

71. The Plaintiff's and SSP's earned minimum wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

72. In violating the OPPA, Defendants have acted willfully and with reckless disregard.

## FOURTH CAUSE OF ACTION
**Violation of Public Policy Set Forth in O.R.C. § 4123.90, *et seq.***

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. Plaintiff was an employee of Defendants at all points relevant to this matter.

75. O.R.C. §4123.90 establishes a clear public policy against Defendants terminating Plaintiff because he expressed an intent to file for workers' compensation benefits after suffering a workplace injury. O.R.C. §4123.90 provides, in pertinent part, that "[n]o employer shall discharge … any employee because the employee filed a claim or instituted … any proceedings under the

12

workers' compensation act for an injury … which occurred in the course of and arising out of his employment with that employer."

76. Defendants' termination of Plaintiff for expressing an intent to file for workers' compensation benefits would jeopardize the public policy set forth in O.R.C. §4123.90.

77. Defendants' intent to terminate Plaintiff for expressing an intent to file for workers' compensation benefits is clearly demonstrated by, among other things, the timing when Plaintiff requested to file workers' compensation benefits and his termination.

78. Defendants did not have a legitimate business reason for terminating Plaintiff.

79. Accordingly, Plaintiff was wrongfully discharged in violation of public policy.  As a result, Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
**Unlawful Age Discrimination in Violation of O.R.C. § 4112 *et seq.***

80. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

81. As a person aged 60 years old, Plaintiff is a member of a protected class.

82. Plaintiff was qualified to do his job because, among other reasons, he had worked in his position for many years prior to his termination.

83. Plaintiff suffered an adverse employment action when Defendant terminated his employment.

84. Defendant's decision to terminate Plaintiff's employment was causally connected to his age given, among other reasons, he was treated less favorably than similarly situated, substantially younger employees and/or replaced by a substantially younger person.

13

85. Plaintiff will be able to establish that any alleged legitimate reason to terminate his employment was a pretext for discrimination.

86. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered severe emotional and psychological distress, embarrassment, humiliation, lost wages and benefits, attorneys' fees, and other economic damages in excess of $25,000

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and individually, for an Order:

A. Certifying the proposed FLSA collective action;

B. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the SSPs apprising them of the pendency of this action, and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

C. Directing Defendants, at their own expense, to investigate and account for the number of hours actually worked by Plaintiff and the putative collective members per week, and if Defendants failed to keep accurate records in accordance with Ohio Law, Plaintiff and the SSPs are entitled to prove their hours worked with reasonable estimates;

E. Awarding to the Plaintiff and the SSPs unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

F. Awarding to the Plaintiff and the SSPs unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio Law;

G. Awarding Plaintiff and the SSPs costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

H. Awarding Plaintiff and the SSPs such other and further relief as the Court deems just and proper;

I. Issuing an injunction prohibiting Defendants from engaging in present, ongoing, and future violations of the FLSA and Ohio Law;

J. Granting the Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

K. Rendering a judgment against Defendants for all damage, relief, or any other recovery whatsoever.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery Road, Suite 11A
Cincinnati, OH  45242
brad@gibsonemploymentlaw.com
513.834.8254 [T]
513.834.8253 [F]

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)