## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **RONALD DILL** | : | Case No. 3:20-cv-373 |
| | : | |
| | : | Judge: Michael J. Newman |
| | : | |
| **Plaintiff for himself,** | : | |
| **and all others similarly situated,** | : | |
| | : | |
| v. | : | |
| | : | |
| **DRAKE-STATE AIR, INC. et al.** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND REQUEST TO STAY DISTRIBUTION OF CLASS NOTICE

Plaintiff Ronald Dill ("Plaintiff") and Defendants Drake-State Air, Inc. and Steve Chrismer (collectively, "Defendants"), hereby request, through their undersigned counsel, that the Court: (1) stay the Court's requirement that Plaintiff distribute the proposed notice of the conditional certification of the Fair Labor Standards Act ("FLSA") collective action pursuant to the Court's Order and Entry granting Plaintiff's Unopposed Motion for Conditional Class Certification (ECF Doc. # 9); and, (2) provide an entry of an order approving the settlement between Plaintiff and Defendants pursuant to the FLSA.  A copy of the parties' Settlement Agreement is attached hereto as Exhibit A, Declaration of Bradley L. Gibson as Exhibit B, and a proposed Order is attached hereto as Exhibit C.  A Memorandum in Support of this Motion follows below.

Respectfully submitted,

| | |
|---|---|
| */s/ Bradley L. Gibson* | */s/ Zachary M. Swisher (per email authorization)* |
| Bradley L. Gibson (0085196) | Zachary M. Swisher (0076288) |
| **GIBSON LAW, LLC** | **SYBERT, RHOAD, LACKEY & SWISHER, LLC** |
| 9200 Montgomery, Road, Suite 11A | 153 South Liberty Street |
| Cincinnati, OH 45242 | Powell, OH 43065 |
| 513.834.8254 [T] | [T]: 614.785.1811 |
| 513.837.8251 [F] | [F]: 614.785.1069 |
| brad@gibsonemploymentlaw.com | zach@law153group.com |
| *Counsel for Plaintiff* | *Counsel for Defendants* |

## MEMORANDUM IN SUPPORT

I. **INTRODUCTION**

Plaintiff Ronald Dill ("Plaintiff) brought this action against Defendants Drake-State Air, Inc. and Steve Chrismer (collectively, "Defendants"), asserting: (1) an unlawful age discrimination claim under O.R.C. 4112 *et seq*.; (2) a termination in violation of public policy claim as recognized in O.R.C. 4123.90 *et seq*.; (3) a claim based upon a failure to pay wages timely as required under O.R.C. 4113.15; and, (4) claims of unpaid overtime under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*., Ohio Minimum Fair Wage Standards Act, and Ohio Constitution, Art. II, §34a. Plaintiff's claim for unpaid overtime under the FLSA is premised on Defendants' alleged failure to properly compensate him for all overtime hours worked as required by the FLSA. Plaintiff claims that, as a HVAC installer, Defendants required him to perform uncompensated pre-shift and post-shift work, plus perform drive time at the end of his shift that was uncompensated. Plaintiff indicates that this off-the-clock work resulted in unpaid overtime. Defendants dispute Plaintiff's claims, alleging among other things, that Plaintiff did not perform the alleged uncompensated work and, to the extent that he did, his drive time is non-compensable under the Portal-to-Portal Act and his pre-shift and post-shift work is excluded under the FLSA's *de minis* exception.

Plaintiff brought the unpaid overtime claim under the FLSA on behalf of himself and similarly situated HVAC installers. Plaintiff filed a Motion for Conditional Certification on September 16, 2020, requesting that the Court conditionally certify the proposed FLSA class and implement a procedure whereby Court-approved notice of his claim be promptly sent to all potential opt-in plaintiffs. (See ECF Doc. # 2). In February 2021, Plaintiff and Defendants tentatively settled Plaintiff's individual claims against Defendants, subject to the review of the

settlement agreement and the approval by the Court. Defendants settled Plaintiff's individuals claims on the condition that the case would be dismissed after the Court approved the settlement agreement and Plaintiff dismissed his claims with prejudice. Soon after the parties tentatively settled Plaintiff's individual claims, on February 25, 2021, the Court granted Plaintiff's Motion for Conditional Certification. (See ECF Doc. # 9). In the Court's Entry and Order, the Court conditionally certified a class of all installers who work or have worked for Defendants since September 7, 2017 through the present and approved Plaintiff's proposed notice for distribution.

The parties request that the Court approve their proposed settlement of Plaintiff's individual claims against the Defendant. The parties engaged in informal discovery for the purposes of allowing Plaintiff to provide a demand to Defendants. Thereafter, the parties engaged in good-faith negotiations through their respective counsel of these bona fide disputes, which resulted in the parties reaching the final resolution respective of all terms. The parties request the Court's approval because the terms of the settlement are adequate, fair, and reasonable.

The parties also request that the Court allow for Plaintiff not to distribute the notices to the members of the conditionally certified class prior to the Court's decision as to whether or not approve the parties' proposed settlement of claims. The parties request that the Court first decide whether or not to approve the proposed settlement agreement because, if the Court approves it and Plaintiff dismisses his claims as a result, this case ends as the Court will no longer have subject matter jurisdiction given there is no plaintiff. In Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013), the United States Supreme Court held that when a plaintiff's claim in a collective action becomes moot before other plaintiffs have opted-in, the court lacks continued subject matter jurisdiction over the case.

II. **SETTLEMENTS TERMS**

The material terms reflected in the attached Agreement provides for payment to Plaintiff for overtime wage compensation by Defendants for the time periods in which Plaintiff can potentially collect compensation in this action under the FLSA, OMFWSA, and the Ohio Constitution.[1] The Agreement directs that Defendants will, without any admission of liability, pay the total sum of $70,000.00 to Plaintiff and his legal counsel as allocated as follows:

(1) One payment to Plaintiff Ronald Dill in the amount of $10,664.80 representing back wages. A second payment to Plaintiff Ronald Dill in the amount of $30,935.20 representing non-back pay wages (e.g., liquidated damages, emotional distress damages).

(2) Payment to Gibson Law, LLC in the amount of $28,400.00 representing attorneys' fees and costs associated with bringing this action.

In exchange for the monetary and other consideration recited in the Agreement, Plaintiff hereby agrees to dismiss the Lawsuit with prejudice and on the merits. Plaintiff shall release any and all of his wage-and-hour claims that were or could have been brought based on the specific factual allegations contained in the Action, that occurred or are alleged to have occurred at any time through the Approval Date, including without limitation claims for minimum wage payments, overtime compensation, penalties, liquidated damages, interest, attorneys' fees or expenses, and further including claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, the Ohio Constitution, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 ("Released Claims"). Furthermore, "Released Claims" include any claims that were or could have been brought on an individual basis.

---

[1] Attached hereto as Exhibit A is the parties' agreed upon "Confidential and Comprehensive Mutual Release and Settlement Agreement."

Plaintiff also releases and covenants not to sue Defendants from any matter arising out of or in any way related, directly or indirectly, to Plaintiff's employment with Defendants, Plaintiff's compensation and/or the termination thereof, the Released Claims, or with respect to any other transaction, event or occurrence pre-dating the date of this Agreement, whether now known or unknown, including, but not limited to, any claim of breach of contract, wrongful discharge, intentional infliction of emotional distress, retaliation and/or employment discrimination, whether in tort or in contract, any statutory or common law claim for attorneys' fees, any claim for interest on the amounts due hereunder, or any other claim under present or future federal, state or local statute or law, including, but not limited to, the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"); the Civil Rights Act of 1866, 42 U.S.C. §1981; the Civil Rights Act of 1991, P.L. 102-166; the Americans With Disabilities Act, 42 U.S.C. §12101, *et seq.*; the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq.*; the Equal Pay Act, 29 U.S.C. §206(d); the Lilly Ledbetter Fair Pay Act, Public Law No. 111-2; the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.*; the Occupational Safety and Health Act of 1970, 29 U.S.C. §553, *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.*; the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §1161, *et seq.*; the National Labor Relations Act, 29 U.S.C. §151, *et seq.;* and any statutory amendments, R.C. Chapters 4111 and 4112; and Ohio Constitution Art. II, §§34 and 34a.

### A. <u>Proposed Settlement Amount is Fair and Reasonable Resolution of Bona Fid Dispute of FLSA Violations</u>

Approval of the settlement under 29 U.S.C. § 216(b) is appropriate and is warranted in this case. Court approval of FLSA settlements is appropriate when reached as a result of contested litigation to resolve bona fide disputes. <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350,

1358, fn.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Id. at 1353-1354. The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. Crawford v. Lexington–Fayette Urban Cnty. Gov., 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). If, however, the proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. Id. at 1354. In the instant matter, the settlement was a result of an arm's-length negotiation between competent Plaintiff's and Defendants' legal counsel experienced in FLSA litigation.

Plaintiff began working for Defendants in or around 2004. (ECF Doc. # 1, p. 5). During the relevant periods herein, Plaintiff worked for Defendants as a Senior Installer, with the main responsibility of installing residential HVAC units. (Id.) Defendants scheduled Plaintiff work each week from Monday through Friday, and asked him to volunteer on some weekends. (Id.)

Plaintiff alleges that Defendants required him to report to their Eaton, Ohio facility at 7:30 a.m. (Id.) Once at the facility, Plaintiff clocked-in for the day. (Id.) Plaintiff alleges that Defendants required him to report to the facility so he could do, among other things: meet his other crew member for the day; receive any necessary instructions and feedback from Keith Moody (VP and Chief of Operations); load the company-owned vehicle with the necessary supplies, materials, and tools; and, pick up the company-owned vehicle. (Id.) Plaintiff claims that picking up the company-owned vehicle was extremely important because it not only allowed him to haul all the tools and supplies to the job, but it also contained a layout table for performing sheet metal work,

a metal brake for bending sheet metal, and a Pittsburgh machine to lock sheet metal together, which was vital for making custom fittings for the job. Indeed, they referred to the company-owned vehicles as the "warehouses on wheels." (Id.)

Plaintiff and the other crewmember drove the company-owned vehicle together to the customer's house each day. (Id. at p. 6) Plaintiff alleges that he worked through the day until he finished the job at the customer's house sometime between 4:00 p.m. and 6:00 p.m. (Id.) After installing the HVAC unit, Plaintiff took pictures of the job, tested equipment and set up, checked all operations, completed paperwork, answered customer questions, collected the balance due, and debriefed job information via the iPad. (Id.) Plaintiff and the other crewmember clocked out on their phones once they completed all the paperwork at the customer's house. (Id.)

Plaintiff alleges that Defendants failed to him and the other installers for their drive-time from the customer's house back to the shop. (Id.) Since Defendants installed HVAC units all throughout the Dayton, Ohio region, including as far east as Springfield, Ohio, Plaintiff claims that he spent approximately four hours per week of drive-time at the end of his day for which Defendants did not compensate him. (Id.) Plaintiff claims that Defendants mandated that he and the other installers drive the company-owned vehicles because, among other reasons: (1) the company-owned vehicle might need to be unloaded and reloaded at the end of the day; (2) if lead man called off, Defendants needed the company-owned vehicles at the shop; and, (3) the security of maintaining the company-owned vehicle at Defendants' facility as it was on camera all night at Defendants' facility. (Id.)

Plaintiff also alleges that, a few days a week, Defendants required him to perform additional tasks once he got back to Defendants' facility at the end of the day. (Id.) Plaintiff further alleges that for a 12-month period beginning in late 2017, Defendants required to perform

8

off-the-clock work by arriving to the facility a half-hour early and perform tasks such as unlocking the shop, opening the building, and more. (Id. at p. 7)

Given that Defendants did not compensate Plaintiff for his drive-time back to Defendants' facility and for work he performed both pre-shift and post-shift work, Plaintiff claims that he is entitled to unpaid overtime. Plaintiff was entitled to overtime premium payments because, among other things, he is a non-exempt employment under the FLSA since Defendants paid him on an hourly basis.

Prior to filing Plaintiff's lawsuit, he provided Defendants a demand that was based upon his alleged unpaid overtime. That demand was calculated by: using a three-year look back period; him working a minimum of 6 hours of overtime per week, with him working up to 8.5 hours of overtime during the period in which he claims that he came to work 30 minutes early each day; him working each week of the year the alleged hours; his hourly rate at the relevant period of time; and, assuming he is entitled to liquidated damages. Specifically, Plaintiff provided the following demand based upon his alleged unpaid overtime:

| Time Period | OT Amount | Total Damages |
|---|---|---|
| May 2017 to Oct. 2017 | $5,967.00<br>(($25.50 * 1.5) * 6 hrs. OT/wk.) * 26 wks.) | **$11,934.00**<br>($5,967.00 * 2) |
| Nov. 2017 to May 2018 | $6,719.25<br>(($25.50 * 1.5) * 8.5 hrs. OT/wk.) * 31 wks.) | **$13,438.50**<br>($6,719.25 * 2) |
| June 2018 to Oct. 2018 | $7,994.25<br>(($28.50 * 1.5) * 8.5 hrs. OT/wk.) * 22 wks.) | **$15,988.50**<br>($7,994.25 * 2) |
| Nov. 2018 to Jan. 2020 | $16,672.50<br>(($28.50 * 1.5) * 6 hrs. OT/wk.) * 65 wks.) | **$33,345.00**<br>($16,672.50 * 2) |
| **Total Damages** | | **$74,706.00** |

Defendants deny that Plaintiff is entitled to the overtime amount he claims. Defendants claim that the time Plaintiff drove back from the customer's last house was not compensable under the FLSA because they provided Plaintiff the opportunity to drive the truck back to his house for

9

the day, rather than being forced to take it back to Defendants' facility. Defendants support their claim by indicating that they can provide many examples of Plaintiff driving the truck directly to his house after finishing at his last customer's house. Defendants claim that since Plaintiff had the discretion to drive the truck home each day, his drive-time after he clocked-out at the end of the shift is non-compensable under the Portal-to-Portal Act, which amended the FLSA.

Defendants also claim that Plaintiff's alleged post-shift and pre-shift work is not compensable because: (a) they claim it did not factually happen; and, (b) assuming *arguendo* Plaintiff performed such work, it was *de minis* work that is not compensable under the FLSA. See Scalia v. AWP, Inc., 2020 U.S. Dist. LEXIS 241258, *55 (W.D. Mich. 2020) (recognizing "[e]mployers do not violate FLSA by failing to account or pay for otherwise compensable activities when the time employees spend performing those activities are negligible.").

Additionally, Defendants argue that Plaintiff's demand amount is too high because they have records of Plaintiff not working full workweeks (e.g., holiday weeks) during the periods in which Plaintiff claims that he worked the full amount of overtime he claims. Defendants also argue that Plaintiff's demand amount is too high because they claim that many of the jobs Plaintiff performed were within a much closer proximity to their facility than average half-hour daily drive Plaintiff used in calculating his demand.

Finally, Defendants contend that even if Plaintiff was not paid for some work, the omission was inadvertent and not in bad faith. Accordingly, Defendants claim that Plaintiff is not entitled to liquidated damages and a three-year look back period.

In light of the parties' respective positions, the parties have agreed to resolve their claims pursuant to the requirements set forth in the attached Agreement. The settlement is fair, just, and an adequate resolution of Plaintiff's unpaid overtime claim because, as threshold issue, the

settlement amount is almost the entire amount of Plaintiff's demand for his unpaid overtime and liquidated damages.  The fairness of the settlement is especially the case considering the necessary time and expense to further litigate this case.  As counsel for the parties well understand, litigation is an inherently risky and lengthy process.  Formal discovery in this action, which has been limited in nature thus far, will necessarily be time consuming and complex, as this case involves significant fact-finding and document review.  Through the settlement negotiations, the parties spent significant time discussing each side's respective claims and defenses, demonstrating significant material factual disputes and differences in the interpretation of the law.  Absent settlement, final adjudication of Plaintiff's claims may take several years, as the parties would have to engage in discovery regarding Plaintiff's hours worked, elicit testimony of potential expert witnesses, file summary judgment motions, and conduct a trial. The parties have thus entered into the Agreement to avoid the necessity, expense, inconvenience, and uncertainty of litigation.

There is no risk of fraud and collusion because the parties' respective counsel have been in settlement negotiations for almost eleven months.  When those settlement negotiations originally broke down in approximately July 2020, Plaintiff was forced to file this action.  Additionally, Plaintiff's claims are complex because the parties will have to argue as to whether or not the Portal-to-Portal Act applies, the *de minis* exception rule applies to certain tasks performed by Plaintiff, whether Plaintiff worked the overtime hours he alleges, and whether or not Defendants acted in bad-faith. Given the complexity and uncertainty of Plaintiff's claims, it is far from certain that he will succeed on his unpaid overtime claims.  That is why Plaintiff's settlement for almost his entire overtime demand amount is more than reasonable and fair.

Plaintiff pursuing his overtime claims will be very time consuming and costly given the types of evidence that he will need to rely upon to prevail.  For example, Plaintiff will need to

show the actual drive-time from the last customer's house to Defendants' facility by likely reviewing the address of the last customer's house and determining the distance to Defendants' facility. Evaluating that evidence will consist of the review of thousands of documents and hundreds of calculations. Further, Plaintiff's claims for unpaid overtime based upon pre-shift and post-shift work will consist of conducting depositions of many different installers and management employees, as Plaintiff allegedly conducted this work in front of a high number of employees at Defendants.

Accordingly, in light of the contested factual and legal issues involved, the expense and time necessary to prosecute the action through trial, the risks and costs of further prosecution of the action, the uncertainties of complex litigation, and the benefits to be received pursuant to the Agreement, the Agreement is fair, reasonable, and in the best interests of the respective parties and the Court should therefore approve it.[2]

### B. The Attorneys' Fees Requested Are Reasonable

"The FLSA provides for award of reasonable attorney fees and costs in addition to any judgment awarded to the plaintiff." Morse v. Complete Wiring Concepts, LLC, 2018 U.S. Dist. LEXIS 105839 (citing See 29 U.S.C. § 216(b)). In an individual FLSA action, such as here, where

---

[2] The parties request that the Court approves the Agreement containing a "Mutual Confidentiality" clause. While the parties acknowledge that some district courts within the Sixth Circuit have cautioned against the inclusion of confidentiality provisions in settlement agreements involving FLSA claims, see, e.g., Chime v. Family Life Counselling & Psychiatric Servs., 2020 U.S. Dist. LEXIS 214765 (N.D. Ohio 2020), the parties request that the Court approve the parties' Agreement given the unique circumstances surrounding the settlement. The parties' settlement is unique because it contains a release of both Plaintiff's unpaid overtime claims and his unlawful termination claims asserted against Defendants in this action. Defendants are understandably concerned that the disclosure of the Agreement's terms to others will be construed as the value of Plaintiff's overtime claims, not knowing and understanding that Plaintiff's settlement also involves his additional claims. Importantly, the parties are **not** asking to file the motion seeking court approval under seal, which is generally the basis for which judges within the Southern District of Ohio express concerns about the confidentiality nature of FLSA settlements, recognizing that the "public has a strong interest in obtaining the information contained in the court record." Schmalenberg v. Dysphagia Mgmt. Sys., LLC, 2019 U.S. Dist. LEXIS 32204, ** 2 – 3, (S.D. Ohio 2019) (Judge Black) (denying the parties' request to file their proposed settlement agreement under seal for the Court's review); Camp v. Marquee Constr., Inc., 2020 U.S. Dist. LEXIS 1365 (S.D. Ohio 2020) (Judge Marbley) (same).

the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees. See Ali v. Piron, LLC, 2019 U.S. Dist. LEXIS 63229 (E.D. Mich. 2019) (internal citations omitted). Further, "[a] reasonable fee is one that is adequate to attract competent counsel, but … [does] not produce windfalls to attorneys." Batista v. Tremont Enters., 2019 U.S. Dist. LEXIS 121658.

Here, the request for attorneys' fees is reasonable under the circumstances. Plaintiff agreed with his attorneys to pay them an attorneys' fees amount equal to the greater of the following amounts: (1) forty percent (40.00%) of the gross settlement or judgment received by Plaintiff; or, (2) the amount awarded as attorneys' fees provided as a result of the fee-shifting statute (e.g., FLSA). (Declaration of Bradley L. Gibson, ¶6).[3] As of the date of this filing, the attorneys' fees and costs allowed pursuant FLSA's fee-shifting provision is $17,774.00. (Id. at ¶9). Since that amount is less than the contingency fee amount the Plaintiff agreed, the attorneys' fees and costs requested are $28,400.00.

The attorneys' fees requested pursuant to the contingency fee arrangement between the Plaintiff and his attorneys are reasonable given, among other reasons, the risk associated with the attorneys collecting no fees even if Plaintiff succeeds on the merits of his claims. Defendant Drake-State Air, Inc. is a small-to-mid-size company. (Id. at ¶8). As such, there is a real risk that Defendant Drake-State Air, Inc., could not make any payments to Plaintiff and his attorneys if Plaintiff is to litigate their claims further. Indeed, Defendants suggested during settlement negotiations the difficultly it could have making payments in certain amounts in light of the financial situation caused by COVID-19. (Id.)

---

[3] Attached hereto as Exhibit B is the Declaration of Bradley L. Gibson

13

The Plaintiff's attorneys appreciate the risk of small-to-midsize companies choosing to file for bankruptcy in response to FLSA claims, as that has happened in a number of cases in which Plaintiff's attorneys have been involved. For instance, in *William Collins et al., v. The Stable Bar, LLC, et al.*, Case No. 3:18-cv-00191, (S.D. Ohio) (J. Rose), the Plaintiff's attorneys received no attorneys' fees in that case because their clients were forced to dismiss their FLSA claims after the defendants in that case filed for bankruptcy. (Id. at ¶12). The defendants in that case were a restaurant and the individual business owner. (Id.) At the time of dismissal, the attorneys' fees were more than $30,000.00, which was never collected given the priority of defendants' secured creditors in bankruptcy. (Id.)

Likewise, in *Matthew Bechter et al. v. Orion Utilities, LLC et al.*, Case No., 3:16-cv-00252, (S.D. Ohio) (J. Rice), *Morgan Perry et al. v. Krieger Beard Services, LLC*, Case No. 3:17-cv-161 (S.D. Ohio) (J. Rose), and *Derek LaVonn Berry v. Aramark Services, Inc. et al.*, Case No. 18-cv-459 (S.D. Ohio) (J. Dlott), the small-to-mid-size companies that were defendants in those actions either filed for bankruptcy or took a default judgment after their counsel withdrew in the face of FLSA claims. (Id.) Given that the plaintiffs' claims were strongest against those defendants, Plaintiffs' attorneys were forced to accept attorneys' fees well below the lodestar amount in order to resolve the claims against the remaining companies.

The risk of non-payment in FLSA cases involving small-to-mid-size companies is high because, while companies often have employment practices liability insurance plans, those plans almost always exclude coverage for claims brought under the FLSA and other wage-and-hour laws. (Id. at ¶13). As such, there is no "deep pocket" for plaintiffs to seek payment from in FLSA cases involving small-to-mid-size companies. The risk of non-payment also is high because small-to-mid-size companies generally have less access to capital necessary to make sizable payments.

The attorneys' fees requested by Plaintiff's attorneys are also reasonable based upon other decisions in the Southern District of Ohio that compare the contingency fee amount to the lodestar amount. As discussed, the requested attorneys' fees pursuant to the contingency amount are less than a multiplier of 2 of the lodestar amount. In light of that ratio, the attorneys' fees requested in this case are reasonable. See Castillo v. Morales, Inc., 2015 U.S. Dist. LEXIS 192936, *7 (S.D. Ohio, Dec. 22,2015) (holding that a 2.5 multiplier is "typical of lodestar multipliers in similar cases"); Thorn v. Bob Evans Farms, Inc., 2016 U.S. Dist. LEXIS 195207, **7 – 8 (S.D. Ohio, Feb. 26, 2016) (determining the common fund amount is reasonable given the "fee requested represents a multiplier of 2.01 of the lodestar amount."). Relying upon that ratio to determine the reasonableness of the attorneys' fees requested is most logical given that attorneys provide their services through the time they provide their clients in pursuing their clients' claims. For instance, attorneys who receive contingency fee amounts equal to double their lodestar amounts attributes the realistic risks associated with bringing claims on a contingency fee basis. If attorneys cannot receive the premium relative to the risk they take working on a contingency fee basis, they will not be able to represent clients. That is especially true in situations such are here because, as discussed, there is a real risk Plaintiff's attorneys could receive no payment at all.

### III.     SETTLEMENT AND DISMISSAL OF THIS ACTION

The United States Supreme Court has recognized that, "[i]n the absence of any claimant's opting in [a FLSA collective action], respondent's suit became moot when her individual claim became moot, because she lacks any personal interest in representing others in this action." Genesis Healthcare Corporation et al. v. Laura Symczyk, 133 S. Ct. 1523, 1529 (2013). "While the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and 'other employees similarly situated,' 29 U.S.C. §216(b), the mere presence of collective-action

15

allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." Id.

In Genesis, the United States Supreme Court distinguished its ruling from decisions in which it had granted class certification under Fed. R. Civ. P. 23. It recognized that, "[u]nder the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending court-approved written notice to employees, [citation omitted], who in turn become parties to a collective action only by filing written consent with the court." Id. at 1530. As such, it recognized that, "even if respondent were to secure a conditional certification ruling on remand, nothing in that ruling would preserve her suit from mootness." Id.

Here, Plaintiff's claims will become moot if the Court approves the settlement between the parties and Plaintiff dismisses his claims with prejudice. Once Plaintiff's claims become moot, the Court will lack subject matter jurisdiction over the case as the no other person has become a plaintiff in the case. That is the case, consistent with Genesis, even though the Court conditionally certified the collective action.

## **CONCLUSION**

For all of the above reasons, the parties respectfully request that the Court approve the parties' executed Agreement and enter the proposed order dismissing the Plaintiff's action in its entirety, with prejudice.

16

Respectfully submitted,

| | |
|---|---|
| */s/ Bradley L. Gibson* | */s/ Zachary M. Swisher (per email authorization)* |
| Bradley L. Gibson (0085196) | Zachary M. Swisher (0076288) |
| **GIBSON LAW, LLC** | **SYBERT, RHOAD, LACKEY & SWISHER, LLC** |
| 9200 Montgomery, Road, Suite 11A | 153 South Liberty Street |
| Cincinnati, OH  45242 | Powell, OH 43065 |
| 513.834.8254 [T] | [T]: 614.785.1811 |
| 513.837.8251 [F] | [F]: 614.785.1069 |
| brad@gibsonemploymentlaw.com | zach@law153group.com |
| *Counsel for Plaintiff* | *Counsel for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)