# CONFIDENTIAL AND COMPREHENSIVE MUTUAL RELEASE
# AND SETTLEMENT AGREEMENT

This Confidential and Comprehensive Mutual Release and Settlement Agreement ("the Agreement") is made and entered between Drake-State Air, Inc. (collectively "Company") including its current and former owners, current and former directors, current and former officers, current and former managers, current and former employees, current and former agents, and current and former independent contractors, regardless of whether in their representative or individual capacities, insurers and/or affiliates on the one hand, and on the other hand, and Ronald Dill, for himself, his heirs, personal representatives, beneficiaries, successors and assigns, (hereinafter "Dill")  (where Company and Dill are hereinafter collectively referred to as the "Parties").  The Effective Date of this Agreement shall be the latest date upon which all Parties execute this Agreement.

## RECITALS

WHEREAS, Dill is a former employee of Company; and

WHEREAS, Dill through counsel commenced an action against Company.  Said action is United States District Court Southern District of Ohio 3:20 CV 373; and

WHEREAS, Company and Dill have engaged in dispute resolution; and

WHEREAS, Company further denies any and all other potential or actual liability or wrongdoing to Dill; and

WHEREAS, Dill denies any and all liability or wrongdoing to any and all of Company; and

WHEREAS, the Parties desire to forever fully and finally resolve globally their dispute including those claims Dill has alleged against the Company, and Dill further desires to fully release any and all claims against Company whether previously raised or discussed or known by

1

either Party or anyone person or entity dismiss, and further to release any claims based on any or all events that occurred from the beginning of time through the Effective Date of this Agreement, including, without limitation, the underlying claims in the current litigation; and to settle and globally release any and all claims arising between the Parties from, in connection with, or related in any way to Dill's employment relationship with, and/or cessation thereof, with Company or any and all claims Dill has or may have against Company (as that term has been previously defined in this Agreement), and any and all other potential or actual claims arising from, in connection with or related to the relationship between the Parties, or any claims that Dill has or may have against Company, and the Parties further wish to settle any and all claims that any and all of Company have or may have against Dill, and to globally release Dill from any and all claims which could have been alleged in a Lawsuit or otherwise may or could be asserted against Dill up through the date of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises, covenants and releases contained herein, which constitute good and valuable consideration, the sufficiency of which is hereby acknowledged by the undersigned, the Parties to this Confidential and Comprehensive Mutual Release and Settlement Agreement hereby agree as follows:

1.      Settlement Payment.  In exchange for being paid to himself and/or his attorneys, an overall settlement payment in the gross amount of $70,000.00 ("the Settlement Payment"), Dill will dismiss, with prejudice, and/or waive all of his claims against Company and Dill will further forever release and discharge Company from any and all claims he has or may have against any or all of Company, whether in their representative or individual capacities, from any and all potential

or actual claims he has or may have against Company. The Company shall make the Settlement Payment as follows:

    a. Company will issue a check payable to "Ronald Dill" in the amount of Thirty-Thousand Nine Hundred and Thirty-Five Dollars and Twenty Cents ($30,935.20), to which the Company will issue Dill a 1099 Form for this payment. Company will provide this payment within fourteen (14) days of the effective date of this Agreement;

    b. Company will issue a check payable to "Gibson Law, LLC" in the amount of Nineteen Thousand and Sixty-Four Dollars and Twenty Cents ($19,064.20), to which the Company will issue Gibson Law, LLC, a 1099 Form for this payment. Company will provide this payment within fourteen (14) days of the effective date of this Agreement. ; and

    c. Company will issue a check payable to "Ronald Dill" in the amount of Six Thousand Six Hundred and Sixty-Six Dollars ($6,666.00), minus applicable taxes, to which the Company will issue Dill a W2 Form for this payment. Company will provide this payment by June 1, 2021.

    d. Company will issue a check payable to "Ronald Dill" in the amount of Three Thousand Nine Hundred and Ninety-Eight Dollars and Eighty Cents ($3,998.80), minus applicable taxes, to which the Company will issue Dill a W2 Form for this payment. Company will provide this payment by July 1, 2021.

    e. Company will issue a check payable to "Gibson Law, LLC" in the amount of Nine Thousand Three Hundred and Thirty-Five Dollars and Eighty Cents ($9,335.80), to

        which Company will issue a 1099 Form for this payment.  Company will provide this payment by August 1, 2021.

    f.       Dill will dismiss and forever waive all claims against Company.

  2.       The Parties hereby agree that the Settlement Payment will be sent from the Company to Dill's legal counsel, Brad Gibson, on or before fourteen (14) days after Dill provides an executed copy of the Agreement and completed W9 Forms from Dill and Gibson Law, LLC, to Company legal counsel Zachary Swisher.

  3.       Dill understands and agrees that Dill is solely responsible to pay and will pay all taxes owed by him, if they are due, on any and all of the Settlement Payment set forth in this Agreement. Dill agrees to indemnify and hold harmless Company for and against any taxes, penalties and interest owed by Dill and assessed against Company as the result of Dill's failure to properly pay all taxes owed by her.

  4.       <u>Full and Final Release and Dismissal of Claims by Dill.</u>  As a material inducement for Company to enter into this Agreement, and in consideration of the covenants undertaken herein by Company, and except with respect to the obligations created herein, as further consideration for this Agreement, Dill shall hereby dismiss, with prejudice, and waive all of the claims currently alleged, and he shall further fully release and forever discharge Company from any and all claims, charges (including her right to receive any financial remuneration based on any filing with Equal Employment Opportunity Commission, Ohio Civil Rights Commission or the Ohio Department of Job and Family Services ), demands, obligations, debts, judgments, actions and causes of action in any way related to or connected with Dill's employment by Company or cessation thereof, from the beginning of the world to the Effective Date of this Agreement, any actions or events that occurred through the Effective Date of this Agreement, including, but not limited to, all claims

4

asserted in or which could have been asserted in a Lawsuit, together with any and all other claims that Dill had or may now have, whether known or unknown, against Company in any way related to or arising out of or in connection with his employment by Company and/or his cessation of employment therefrom, except that any claim to enforce this Agreement and/or the mutual promises and agreements set forth in this Agreement is reserved and not released.  This release further includes, but is not limited to, any claim of express or implied contract or promissory estoppel, or pursuant to any federal, state or local employment laws, regulations, executive orders or other requirements, including, without limitation:  Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act of 1990; the Civil Rights Act of 1991; the Family and Medical Leave Act of 1993 (FMLA); the Fair Labor Standards Act (FLSA); the Occupational Safety and Health Act of 1970 (OSHA); the Sarbanes-Oxley Act of 2002, the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act;  the Consolidated Omnibus Budget Reconciliation Act (COBRA); Ohio's fair employment statute; and any other federal, state or local civil, labor, pension, wage-hour or human rights law, regulation or ordinance, federal or state public policy, contract law, tort law; any claim arising under the federal statutory or common law or Ohio statutory or common law, including wrongful discharge, retaliatory discharge, constructive discharge, battery or intentional or negligent infliction of emotional distress; and any claim for costs or attorney's fees or pre or post judgment interest. This release also includes any claims for regular or overtime compensation or other compensation of any kind, back pay, front pay, wrongful discharge, discrimination, breach of employment contract, breach of implied covenants of good faith and fair dealing, defamation, negligent or intentional infliction of emotional distress, unemployment compensation, workers' compensation retaliation, and any other claims, whether now known or unknown. Dill shall not seek reemployment with the

5

Company and if Dill does seek reemployment with the Company and is denied employment, he agrees to waive any and all claims of any kind be it legal, equitable, remedial or administrative, related to the Company's decision to deny him reemployment or employment.  Dill hereby agrees that neither he nor any of his heirs or personal representatives, successors or assigns will ever sue or assert in any form any such claims described above which have accrued as of the Effective Date of this Agreement.  Dill further agrees to release and discharge each and every one of Company not only from any and all claims which Dill could make on his own behalf against them individually or collectively, but he also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or part, from any event which occurred as of the date he signs this Agreement related to the Lawsuit and/or his relationship with Company. The parties agree that if Dill, by no action of his own, becomes a mandatory member of any class from which he cannot, by operation of law or order of court, opt out, he will not be required to pay for any legal fees or costs incurred by any of Company as a result.  Dill does not release any claim that by law cannot be released by private agreement. Nothing in this Agreement precludes Dill from filing a charge or complaint with any governmental agency or from participating or cooperating in any such matters, provided, however, that Dill waives any right to any monetary or other recovery should any governmental agency or other third party pursue any claims on Dill's behalf, either individually, or as part of any collective action. Dill acknowledges and agrees that this release of rights is entirely voluntary.

     5.     <u>Full and Final Release of Claims by the Company.</u>  Company, on behalf of itself, and each and every one of its owners, officers, directors, shareholders, members, agents, employees, servants, predecessors, successors, assigns, parent companies, subsidiaries, related companies, affiliates and aliases, d/b/a's, attorneys, grantees,  and transferees in both its

representative and individual capacity, hereby forever release, acquit, dismiss and discharge Dill, and his past, present and future heirs, successors, legal representatives, agents, attorneys, successors and assigns from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, claims, demands, damages, expenses, attorneys' fees, and executions of every name, kind, nature and description, whatsoever, based on any legal theory, right of action, or otherwise (whether arising under foreign, federal, state, local law, statute or regulation, common law or in equity), suspected or unsuspected, known or unknown and that may hereinafter become known by one or more of Company ever had, now have or may have arising out of or in any way connected with Dill's employment by or with Company, or otherwise, from the beginning of the world to the Effective Date of this Agreement, including, but not limited to, all claims which could have been asserted in a Lawsuit and any claims that Company have had or may now have, whether known or unknown, in any way related to or in connection with Dill, except that any claim to enforce to terms of this Agreement and/or the mutual promises and agreements set forth in this Agreement is reserved and not released. The Parties agree to pay for any legal fees or costs incurred by the non-breaching Party as a result of any breach of any promises in this Agreement. Further, Company does not release any claim that by law cannot be released by private agreement or as a matter of law. This release of rights is entirely voluntary.

    6.  <u>Mutual Non-Disparagement.</u> Dill and Company hereby agree not to publicly or privately disparage the other Parties in any respect. This provision explicitly forbids any and all acts of disparagement through verbal, written or electronic communications (e.g., social media or any other platform on the internet). It is understood and agreed that Dill may discuss with prospective employers the job duties that he performed during his employment with Company, his dates of employment, his job position and titles held during employment at Company, and his

salary or wages, but he may not make negative statements about Company.  It is further agreed that Company will not publicly or privately disparage Dill in any respect. Aside from the foregoing provisions, disclosure of this Agreement's terms or other facts and information may occur only if any of the Parties and/or their agents, attorneys, representatives, employees are served with a valid subpoena or lawful order of a court or administrative agency having competent jurisdiction.

       7.       <u>Mutual Confidentiality</u>.  It is further understood and agreed that none of the Parties hereto, or their respective representatives, heirs, successors, assigns, beneficiaries, or attorneys, will discuss the terms of this Agreement with any person, people, individual, entity, business, news media, reporters, website owners, blog spot owners, newspapers, radio stations, television stations, any social media websites, including, without limitation, Facebook, and any other news media, including any newspapers, as well as any print media or other social media or websites directed to the legal profession except to spouse(s) and immediate family members.  Additionally, the Parties' respective legal counsel agree not to make or participate directly or indirectly in any press release, notice, news report, website, and/or blog spot posting that refers to the Agreement.

Subject to the remaining obligations of this Paragraph 8, if any of the Parties hereto are asked by any third party about any aspect of the Agreement or the settlement herein, , the inquiry will be responded with a statement to the effect of the following:

"The matter has been resolved to our satisfaction by mutual agreement. I cannot discuss it further because of confidentiality.  The resolution was on a basis agreeable to all parties."

The Parties further understand and acknowledge that as a material inducement to enter into this Agreement, none of the Parties (including their respective attorneys in the Lawsuit) will divulge the terms of this Agreement, except with regard to Mr. Swisher, Mr. Gibson and other professionals, such as their respective legal counsel, tax professionals and new officers or directors

of Company who need to know; provided, however, that the Parties relay to each such person or entity to whom disclosure is permitted the obligation to keep said information confidential.

Aside from the foregoing provisions, disclosure of this Agreement's terms or other facts and information may occur only if any of the Parties and/or their agents, attorneys, representatives, employees are served with a valid, subpoena or lawful order of a court or administrative agency having competent jurisdiction.

The Parties agree not to oppose an appropriate motion to enforce this provision of the Agreement in response to any such request or demand for production or disclosure.  Nothing contained in this paragraph shall be interpreted as preventing the Parties including Dill, and Company representative from giving truthful testimony if they are subpoenaed or otherwise compelled by legal process.

Any breach of this provision by Dill shall negate any unpaid amounts under this Agreement and allow the Company to seek repayment for any paid amounts as well as any and all expenses in pursuing Dill for breach of this Agreement inkling attorney's fees.

10. <u>Jurisdiction by Court To Enforce Settlement Agreement</u>.  The United States District Court for the Southern District of Ohio retains jurisdiction to enforce this Agreement, if appropriate.

11. <u>No Admission of Liability or Wrongdoing</u>. The Parties understand that this Agreement is not an admission of any liability or wrongdoing by any Party to any other Party and any such liability or wrongdoing is specifically denied.

12. <u>Construction/Integration Clause</u>.  The Parties agree that if any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the

remainder of this Agreement in full force and effect.  In addition, the Parties agree that they shall not seek, either directly or indirectly, to have any term of this Agreement held unenforceable, including the above release language.  This Agreement is the entire agreement between the Parties with respect to the subject matter hereof.  It supersedes all prior and contemporaneous oral and written agreements related to the subject matter hereof.  This Agreement may be amended only by an agreement in writing, signed by the Parties hereto. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as though jointly drafted by Company and Dill, and no presumption or burden of proof shall arise favoring or disfavoring one party by virtue of the authorship of any of the provisions of this Agreement.

13. <u>Consultation with Attorney</u>.  By signing this Agreement, the Parties agree that they consulted with their own attorney and that they had a reasonable opportunity to read and consider its contents, and agree that they sign this Agreement knowingly and voluntarily, with a full understanding of its terms and significance, and intending to be bound by its terms.

14. <u>Governing Law</u>.  The validity, construction, and interpretation of this Agreement and the rights and duties of the Parties hereto shall be governed by the laws of the State of Ohio.

15. <u>Counterparts and Signatures</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and the same document.  Facsimile or electronic copies of signature pages of this Agreement have the same binding and legal impact as original signature pages.

16. <u>Authority</u>.  In light of the acknowledgements, stipulations, and agreement set forth hereinabove, the Parties to this confidential and comprehensive mutual release and settlement agreement hereby agree as follows:

  a. Each Party executing this Agreement has the right, power, legal capacity, and authority to enter into and perform its obligations under this Agreement;

  b. Each Party executing this Agreement has to his, her or its knowledge complied with, and is not in violation of applicable federal, state or local statutes, laws and regulations affecting any transaction contemplated by this Agreement;

  c. Each Party executing this Agreement has been duly authorized by his, her or its principals to do so and no further consents, approvals, ratifications or resolutions of any kind whatsoever are required in connection with the execution hereof;

  d. Each individual executing this Agreement has had the opportunity to consult with legal counsel, has read and understands the terms of this Agreement and voluntarily accepts said terms and intends to be bound by them;

  e. Each individual executing this Agreement has relied solely on his, her or its knowledge and information and has not relied on any representations, promises or agreements of any kind other than that which is contained in this Agreement made by or on behalf of any Party released hereby;

  f. This Agreement represents the entire Agreement between the Parties hereto with respect to the subject matter hereof, and supersedes any prior understanding, whether written or oral;

  g. This Agreement shall be construed and interpreted in accordance with the laws of the State of Ohio;

  h. In the event that one or more of the provisions of this Agreement are deemed to be illegal or unenforceable, the remainder of this Agreement shall not be affected thereby, and each

remaining provision or portion thereof shall continue to be valid and effective and shall be enforceable to the fullest extent permitted by law.

      IN WITNESS WHEREOF, the Parties have executed this Confidential and Comprehensive Mutual Release and Settlement Agreement as of the dates indicated by their signatures below.

Date: _____　　　　　　　　<u>Company</u>
　　　　　　　　　　　　　　　　　　By: _____

　　　　　　　　　　　　　　　　　　It's _____

Date: _____　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Ronald Dill